GARRISON, Judge.
This is an appeal from a judgment of the district court as follows:
“IT IS ORDERED, ADJUDGED AND DECREED that Tommie McGill is entitled to worker’s compensation in the amount of sixty-six and two-thirds (66%) of his wages from July 29, 1982 through May 7, 1985 and all medical expenses incurred during that period, subject to a credit for any amounts already paid, together with judicial interest from the date of demand until paid and all costs of these proceedings.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the request for penalties and attorney’s fees be, and the same is hereby dismissed.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the expert witness fee of Dr. Seltzer be fixed at the sum of two hundred dollars ($200.00) and taxed as costs in these proceedings.”
The trial court judge provided the following written reasons for judgment:
“Plaintiff in this worker’s compensation case was injured while in the course and scope of his employment with defendant on July 29, 1982. This Court finds that plaintiff was temporarily totally disabled by this injury. Additionally, this Court finds that based on the evidence, he had sufficiently recovered from the back injury by May 7, 1985, to perform work of a reasonable character for which he is suited in light of his training and experience. Plaintiff is therefore entitled to worker’s compensation benefits and medical expense payments through that date.
This Court also finds that defendants’ refusal to pay benefits to plaintiff was reasonable and denies an award of penalties and attorney’s fees.”
On appeal, defendant-appellants Favrot Construction and U.S.F. & G. raise the following specifications of error:
1. The trial court erred in finding that plaintiff incurred an accident while within the course and scope of his employment on July 29, 1982 and in finding that it was a work related accident.
2. The trial court erred in awarding total disability when all medical testimony indicated plaintiff could do light duty as a security guard or truck driver.
3. The trial court erred in failing to outline in specific dollar amounts how much money per week the court was awarding to plaintiff.
Tommie McGill was unemployed when he approached William Rogers, foreman for Favrot Construction at the Oschner Hospital job site. Rogers told McGill that he did not have any work for him then, but to come back tomorrow. At this point a discrepancy in the testimony occurs. McGill testified that Rogers did not tell him what time the next day, so he reported at 7:00 a.m. Rogers testified that he told McGill to report at 6:00 a.m. He confirms that McGill arrived at 7:00 a.m. Rogers testified that he told McGill the day before that the job would be for one day only. McGill neither confirms nor denies that he knew the job was for one day only because he was never asked the question. Both witnesses agree that McGill donned a pair of company-owned rubber boots as was required by the company and went up to the *180 roof where Rogers and his crew were working.
At this point, Rogers’ and McGill’s testimony widely differ. McGill testified that he had been working for about two hours when he injured his back. McGill testified that he had been working with several other men guiding an 8 inch wide pipe extending 18 feet from a cement pump truck. He testified that cement would run through this pipe and that the pipe weighed approximately 100 pounds. He testified that during the two hour period he began experiencing pain and that at 9:00 a.m. he told Rogers about the pain. McGill further testified that Rogers told him to go downstairs and Rogers would join him in a few minutes. McGill testified that although Rogers never showed up, he waited there until one or two p.m. or for 4-5 hours, at which time he finally went home. McGill further testified that he went to the Hotel Dieu Emergency Room that night.
In contrast, Rogers testified that he did not assign McGill to work on the pump truck pipe which McGill describes, but rather he was assigned to work on the treating pipe. Treating pipe is used as a guide in pouring the slab. It is made of PCV electrical pipe and a length weighs no more than 8 or 9 pounds. Rogers testified that he watched McGill the entire time because McGill was a new man and Rogers wanted to see how he worked. Rogers testified that McGill had been working on the treating pipe for 15 minutes when he came to him complaining of leg cramps. McGill complained to him twice about leg cramps. Rogers then told McGill to hold onto the rope guide. McGill never held the rope, but rather followed Rogers to the water carrier and once more complained about leg cramps. At that point Rogers told McGill to “go ahead in” and leave the construction area. Rogers testified that he did not see McGill injure himself nor did McGill ever complain to him of anything other than leg cramps.
Rogers further testified that he next saw McGill at 2:30 p.m. that afternoon. He stated that McGill had changed clothes and was dressed up as if he were going out. Rogers testified that McGill said, “Remember I told you I hurt my back?” to which Rogers replied, “You didn’t tell me that.... You told me you had leg cramps.” Rogers testified that he then walked away.
Rogers testified that he did not fill out an accident report and that he is not charged with that duty. He reports the incident to the superintendent who is responsible for making out the forms.
On appeal, defendants argue that all medical evidence is strictly subjective and that there are no objective indications of injury. This argument is substantially true except for the EMG tests. Dr. Daniel Seltzer testified that the EMG done July 30, 1984 was positive for a radiculopathy of L-5 and S-l and that the EMG is an objective test. Defendants are correct in saying, however, that other than the 2 EMGs, all other medical evidence is purely subjective.
Upon review of the record it is readily apparent that plaintiff failed to carry his burden of proof. Having so concluded, we need not address the other issues raised by appellant which are moot. For the reasons discussed, the judgment of the district court is reversed.
REVERSED.